# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 24-0621V

| | |
|---|---|
| CRYSTAL GREEN, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: June 4, 2025 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

## ORDER TO SHOW CAUSE - SPECIAL PROCESSING UNIT

On April 19, 2024, Crystal Green filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[1] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA") resulting from a varicella vaccine received on June 23, 2022. Petition at 1.

Respondent has filed a Rule 4(c) Report asserting that compensation is not appropriate for several reasons (ECF No. 20). First, Respondent notes that a Table SIRVA claim specifically contemplates *intramuscular* vaccine administration, while the varicella vaccine that is the subject of this claim was administered *subcutaneously*. Second, Respondent asserts that there is inconsistent record evidence concerning whether the varicella vaccine was administered in Petitioner's right, injured arm. Finally, Respondent states that Petitioner did not report shoulder pain relating to her varicella vaccine until six months after vaccination despite four interim medical encounters that are silent on shoulder pain.

### I. Situs and Means of Vaccine Administration

Petitioner received a varicella vaccine on June 23, 2022. Ex. 18 at 7; 20 at 1. The handwritten Rite Aid "Screening Questionnaire and Consent Form" indicates that the

---

[1] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

vaccine was administered in Petitioner's left arm, with the vaccine instructions stating "Inject 0.5 milliliter subcutaneously." Ex. 18 at 7. On this form, "LA" for left arm is circled, and an "L" for left is also handwritten. *Id.* Petitioner also filed a Rite Aid "Patient Immunization Report," which is a computer printout. Ex. 20 at 1. This record indicates that the varicella vaccine was administered subcutaneously in Petitioner's *right* upper arm. *Id.* Thus, *both* records suggest that the vaccine was administered subcutaneously. And they provide conflicting evidence as to the situs of administration.

The Qualifications and Aids to Interpretation for a Table SIRVA provide, in relevant part:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine *intended for intramuscular administration* in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to *intramuscular vaccine administration* that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

42 C.F.R. § 100.3(c)(10) (emphases added).

As the foregoing indicates, a Table SIRVA claim inherently involves *intramuscular* administration of a vaccine. *See Byndloss v. Sec'y of Health & Human Servs.*, No. 20-1781V, 2024 WL 3277098, at *7 (Fed. Cl. Spec. Mstr. May 16, 2024) (measles mumps rubella vaccine intended for and actually administered subcutaneously "could not be the basis for a Table SIRVA," although it could have caused an off-Table injury, and transferring case out of SPU); *see also Chappell-Strickland v. Sec'y of Health & Human Servs.*, No. 18-396V, 2021 WL 610136, at *10 (Fed. Cl. Spec. Mstr. Jan. 27, 2021) (finding that although vaccine was intended for subcutaneous administration, the record was more consistent with an unintended intramuscular administration of the vaccine). In this case, because the records appear to indicate that Petitioner's varicella vaccine was administered subcutaneously, it does not appear that Petitioner could succeed on a Table SIRVA claim.

Moreover, there is conflicting evidence as to the situs of vaccine administration. While there is a record stating that the vaccine was administered in Petitioner's right, injured arm, a different record states in two places that it was administered in her left – uninjured – arm, casting doubt on the viability of any claim, whether Table or off Table.

Although a vaccine administered subcutaneously could potentially form the basis for an off Table claim, Petitioner has not asserted such a claim. And the situs and onset concerns raised by Respondent call into question whether Petitioner could prevail on such a claim.

## II. Onset of Shoulder Pain

It appears that Petitioner did not seek care for right shoulder pain until October 18, 2022, nearly four months after vaccination. Ex. 3 at 24. At this time, she complained of right shoulder blade pain that radiated into her right upper arm – but did not relate the pain to her vaccination or state when it began.[2] *Id.* And it was not until *six months* after vaccination (December 23, 2022) that Petitioner related her symptoms to vaccination. Ex. 4 at 13. At that time, she was seen at an urgent care facility for a reported "allergic reaction to chicken pox vaccine." *Id.* The record states that she reported "an IM [intramuscular] varicella vaccine 6 months ago and has had persisting pain in her arm since then," with limited range of motion. *Id.* The record adds that Petitioner received a "second injection subcutaneously on the underside of the arm" that did not cause problems. *Id.*

Significantly, between the date of vaccination and the December 2022 urgent care visit reporting shoulder pain, Petitioner received a hepatitis B vaccine in her right upper arm on July 20, 2022 – less than a month after the vaccine alleged as causal. Ex. 2 at 11. And in that intervening time, she was seen for another problem without complaining of shoulder pain on July 11, 2022 at the same urgent care where she ultimately reported her shoulder pain, with the record stating she *denied* muscle aches or weakness. Ex. 4 at 15.

That Petitioner received another vaccine in her right arm (the arm at issue in this case) in July 2022 – *less than a month* after she alleges her injury occurred – undercuts her claim that she was then experiencing right shoulder pain. *See Ramirez v. Sec'y of Health & Human Servs.*, No. 21-0344V, 2024 WL 4297848, at *6 (Fed. Cl. Spec. Mstr.

---

[2] This record lists two onset dates ten years apart. At the top of the record, it states "[o]nset of current symptoms: 10/18/2022." Ex. 3 at 23. In the history of present illness section, it states "[o]nset of current symptoms: 10/23/2012." *Id.* It is unclear why there are two different onset dates so far apart. Furthermore, this part of the record discusses Petitioner's back and neck pain with associated shoulder stiffness, but does not otherwise mention Petitioner's shoulder. As such, it is unclear which symptoms these onset dates pertain to.

Aug. 16, 2024) ("[i]t is difficult to accept that Petitioner would have accepted [two other vaccines in her injured arm] if she was suffering from ongoing right shoulder pain").

This claim cannot proceed unless Petitioner offers sufficient evidence in support of her claim. I will afford her the chance to do so. It is important, however, that Petitioner take seriously the chance I am providing her. It is a petitioner's obligation to follow court orders and to provide the evidence to support her claim. Failure to follow court orders, as well as failure to file the medical records and other evidence to support her claim, may result in dismissal of Petitioner's claim. *Tsekouras v. Sec'y of Health & Hum. Servs.*, 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 810 (Fed. Cir. 1993) (per curiam); *Sapharas v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 503 (1996); Vaccine Rule 21(b).

In the event that Petitioner agrees that the claim is not viable, she is advised to consult with Section IX of the Guidelines for guidance on the appropriate notice, motion, or stipulation to file to exit the vaccine program. The Guidelines may be found here:

https://www.uscfc.uscourts.gov/sites/cfc/files/Vaccine%20Guidelines%203.03.2025.pdf

Accordingly:

**Petitioner is therefore hereby ORDERED to Show Cause by <u>Monday, August 04, 2025</u>, why this case should not be dismissed due to insufficient evidence.**

Any questions about this order or about this case generally may be directed to OSM staff attorney **Eileen Vachher at (202) 357-6388 or Eileen_Vachher@cfc.uscourts.gov.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master